[Civ. No. 2824.  First Appellate District, Division Two.—August 8, 1919.]

## E. K. SPOTTON, Appellant, v. EDWARD F. DYER, Respondent.

[1] APPEAL — ORDER DENYING MOTION TO VACATE JUDGMENT — CONSTRUCTION OF FINDINGS.—On an appeal from an order denying a motion made under the provisions of section 663 of the Code of Civil Procedure to vacate a judgment and change the conclusions of law on the ground that they are not supported by the findings, the evidence not being before the appellate court in support of the judgment, any uncertainty in the findings must be resolved against the appellant, and they are to be most strongly construed in favor of the respondent.

[2] CONTRACTS — SEVERAL INSTRUMENTS — SAME TRANSACTION — CONSTRUCTION OF.—Several instruments relating to the same matter between the same parties, and made as parts of substantially one transaction, are to be taken together, and the fact that in none of the instruments is there any reference to the others does not militate against the operation of this rule.

[3] PROMISSORY NOTE—PAYMENT LIMITED TO HAPPENING OF CONTINGENCY — NEGOTIABILITY.—A condition limiting the payment of a note to the happening of a contingency, contained in a collateral agreement and not in the note itself, renders the note nonnegotiable in the hands of the original payee and his indorsee with knowledge of the condition, and in the hands of such payee's assignee for collection after the date of its maturity.

[4] CONTRACTS—PERFORMANCE OF ACT—PAYMENT OF INSTALLMENT—BREACH—WAIVER.—The mere fact of paying one of a series of installments conditioned upon the performance of an act does not constitute a waiver by the payee either of the right to have the act performed or the correlative right to refuse to make the further payments until it is performed.

[5] ID.—TIME FOR PERFORMANCE — WAIVER OF BREACH — CONTINUING BREACH—SUBSEQUENT PAYMENTS.—Where time is not made of the essence of a condition of a contract requiring performance of a given act by a stated date, such act may be performed after that date, but every day's failure to perform after that date is a breach of the contract; and the mere fact that after that date the payee waives the breach by paying one of a series of installments conditioned on such performance does not preclude him from refusing to make subsequent payments because of such continuing breach.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Seawell, Judge. Affirmed.

The facts are stated in the opinion of the court.

Gavin McNab, R. P. Henshall and C. R. Baender for Appellant.

Powell & Dow for Respondent.

BRITTAIN, J.—The plaintiff appeals from an order denying his motion made under the provisions of section 663 of the Code of Civil Procedure to vacate a judgment against him and to change the conclusions of law on the ground that they are not supported by the findings. None of the evidence is before the court. In such a case the appellant necessarily

---

3.  Provision for payment of promissory note on contingency as affecting negotiability, note, 125 Am. St. Rep. 202.

Contemporaneous written instrument as affecting negotiability of promissory note, note, 5 Ann. Cas. 152.

concedes that the findings are correct and responsive to the issues.

On April 1, 1914, the two instruments involved in this suit were executed. One was a contract between Charles H. Green, of San Francisco, and Edward F. Dyer, of Cleveland, Ohio, and the other a promissory note, negotiable in form, for ten thousand dollars made by Dyer to Green payable October 1, 1914. Under the terms of the contract, among other things, Green was to complete and transfer to the Green-Dyer Company on or before June 1, 1914, ten thousand lineal feet of billboards in and near the cities of San Jose, Santa Cruz, and Salinas. These billboards constitute "the plants" to which reference is made in the findings. The contract recited the payment of ten thousand dollars by Dyer, coincident with its execution, and bound Dyer to make two other payments of ten thousand dollars each on or before July 1, 1914, and on or before October 1, 1914, "provided, however, that no payment shall be made by said Dyer other than said ten thousand ($10,000) dollars until the said plants shall have been duly and legally transferred to the Green-Dyer Company, as hereinabove required, and until said plants shall have been completed as provided in paragraph nine hereof." The initial ten thousand dollars only having been paid, the proviso applied to the future payments Dyer agreed to make. The proviso was in paragraph 3 of the contract. Paragraph 9 contained the requirement for Green to complete the plants. The lengthy contract was set forth in full in the findings, and in introducing it the court found that the consideration for the execution of the note by Dyer was the execution of the contract by Green. It was further found that the note and contract were concurrent and dependent; executed at the same time, between the same parties, and with reference to the same subject matter; and "that said note evidences and was intended . . . to evidence, the final payment of ten thousand dollars required by paragraph third of said contract to be paid on or before October 1, 1914. That said final payment was evidenced by said note for convenience of collection only, and there was no understanding between the defendant and said Green that the note was to be negotiated."

[1] In support of the judgment any uncertainty in the findings must be resolved against the appellant, and they are to be most strongly construed in favor of the respondent.

(*Gould* v. *Eaton,* 111 Cal. 639, [52 Am. St. Rep. 201, 44 Pac. 319] ; *Breeze* v. *Brooks,* 97 Cal. 72, [22 L. R. A. 257, 31 Pac. 742] ; *Cooley* v. *Brunswig,* 30 Cal. App. 58, [157 Pac. 13].)

[2]   In neither instrument was there any reference to the other.   This fact did not militate against the operation of the rule that several contracts relating to the same matter between the same parties, and made as parts of substantially one transaction, are to be taken together.   (Civ. Code, sec. 1642.)   Paraphrasing this rule and citing *Goodwin* v. *Nickerson,* 51 Cal. 166, a leading text-writer says : ''Where there is a contemporaneous written contract affecting the terms of the note, it is to be construed with the note. . . . Any lawful condition annexed to the note by a collateral written agreement may be enforced.''   (Daniel on Negotiable Instruments, sec. 156.)   In the familiar application of this rule to notes secured by mortgages, frequently one or each of the instruments refers to the other.   The rule is not changed where no such reference is made.   In the hands of the original payee or of a transferee of the note with knowledge of the collateral agreement, whether or not the note is negotiable in form, it is non-negotiable in fact.   (*Metropolis etc. Bank* v. *Monnier,* 169 Cal. 592, [147 Pac. 265].)

After the execution of the note and contract and before the maturity of the note, Green, for value, transferred the note to the International Banking Corporation.   The court found that prior to and at the time of such transfer, and at all times mentioned in the complaint, the bank had notice and knowledge of the existence of the contract and of all the provisions thereof, and that it took the transfer with such notice and knowledge.   After maturity of the note the bank transferred it to the plaintiff, not for value nor in the due course of business, but for the purpose of collection only.   At no time after the execution of the contract was the capacity of the billboards in excess of 7,468 lineal feet, Green having failed to increase the plants to the contractual ten thousand lineal feet.

The complaint was in the ordinary form of a suit on the promissory note.   The defendant set up the contract, the failure of Green to complete the plants and the knowledge of the bank.   The last finding was that the note had not been paid, ''but that by reason of the provisions of the said

contract, and the facts herein found in connection therewith, there is nothing due or owing from the defendant on said note.'' The conclusions of law, each of which is attacked by the appellant, are that the bank and its assignee, the plaintiff, are bound by the provisions of the contract governing the payment of moneys represented by the note; that as to the bank the note was non-negotiable because of the accompanying contract of which the bank had notice; that under the provisions of the contract the defendant was not required to pay the moneys represented by the note because of the non-completion of the plants; that there is nothing due, owing, or recoverable from the defendant; and, that the defendant is entitled to judgment.

The appellant maintains the decision of the supreme court in the case of *Flood* v. *Petry*, 165 Cal. 309, [46 L. R. A. (N. S.) 861, 132 Pac. 256], is determinative of this case. It appears from the report of that case that Petry undertook to erect a building for Flood. The contract provided that the final payment which was to have become due thirty-five days after completion should be made partly in cash and the balance by a note payable eighteen months thereafter. The note was executed when the contract was signed, and contained the clause: ''This note is negotiable and payable without defalcation or discount and without any relief or benefit whatever from stay, valuation, appraisement, or homestead exemption laws.'' Petry pledged the note to secure a loan from a bank. He failed to perform the building contract. Flood sued him and the bank for cancellation of the note, alleging the bank had notice of the contract. Judgment for Flood was affirmed in the district court of appeal, but on hearing in the supreme court the judgment was reversed upon the ground that the particular note was an advance payment upon the executory agreement of Petry to complete the building, and notwithstanding the bank's knowledge of the building contract, Petry's subsequent breach of the executory agreement did not affect Flood's liability to the bank. In reaching this conclusion, as applied to the particular note, great stress was laid upon the statement of negotiability contained in the note. In the main opinion it was said: ''If Dr. Flood had said to Petry: 'Take this note and, if you like, negotiate it,' the bank, knowing that fact, would have been justified in accepting it for a valuable consideration be-

fore maturity and before breach of the executory contract. But he did say substantially the same thing more emphatically than by word of mouth. He *wrote* it. It was to that extent a waiver of the terms of the building contract and was a payment before performance, upon an executory agreement.'' In the present case, after the payment of the first ten thousand dollars, the contract expressly provided that Dyer was not to pay anything more until the billboards were completed. The court found the bank knew of this condition in the contract when it took the note, and that the note and contract were interdependent. As appears from both the main opinion and the concurring opinion of Mr. Justice Shaw in the Flood case the decision was based largely upon the ground that under the circumstances disclosed by the evidence, and by the assurance of negotiability written on the face of the note, Flood was estopped from denying that it was negotiable. In the present case, in the absence of evidence and in consideration of the knowledge of the bank of the express statement in the contract, no element of estoppel appears. Under section 1642 of the Civil Code, the contract of which the bank had notice was the entire contract evidenced by both the formal contract and the note. It was said by Mr. Justice Shaw, in his special concurring opinion in the Flood case, the note would have been uncollectible had it remained in the hands of Petry. In this case, by reason of the knowledge of the bank of the condition in the contract, it was in no better position than the original payee. If, on the face of the note in the present case, the statement had been made that it was not to be paid unless Green completed the billboards, it would have destroyed its negotiability. (Civ. Code, secs. 3088 and 3092, in effect prior to the amendments of 1917, [Stats. 1917, p. 1534].) **[3]** A condition, limiting the payment of a note on the happening of a contingency, contained in the collateral agreement and not in the note itself, renders the note non-negotiable in the hands of the original payee and his indorsee with knowledge of the condition. (*National Hardware Co.* v. *Sherwood,* 165 Cal. 1, [130 Pac. 881]; *Smiley* v. *Watson,* 23 Cal. App. 413, [138 Pac. 367].) In the Flood case the bank was protected because the note was negotiable. In this case by reason of the condition in the contract, of which the bank had notice, the note

was non-negotiable in its hands and in the hands of its assignee for collection after the date of its maturity.

The sixth paragraph of the contract provided that if for any reason Dyer became dissatisfied with his contract with Green, and before April 1, 1915, elected to withdraw, Green should repay to him all moneys theretofore advanced by Dyer under the contract. Upon the assumption that this clause constituted a special right to rescind, it is argued that to relieve Dyer of his obligation to make the October payment he was compelled to rescind the contract, returning to Green everything of value he had received. Under the contract, in addition to completing the plants and repaying Dyer if he elected to withdraw, Green was obligated to do a number of other things not involved in the present action. The contract provided that certain stock of the Green-Dyer Co. should be placed in escrow until April 1, 1915, and if Dyer elected to proceed further under the contract, it should then be equally divided between Green and Dyer. If, on the other hand, Dyer elected to withdraw from the venture, the stock was to remain in the hands of the depositary, and if Green failed to repay Dyer the money he had advanced, the stock was to be delivered to Dyer for his security. If Dyer had rescinded or if rescission was intended by the sixth paragraph, the result would have been the nullification of this provision for security. To hold that Dyer was compelled to abandon his contractual rights as a prerequisite to his enforcement of them would be absurd. There is no finding that Dyer received anything of value from Green in exchange for the twenty thousand dollars he paid, other than the right to stand upon the terms of the contract, and the evidence, if any was adduced on this subject, is not before the court.

[4] It is argued that since the plants were to have been completed by June 1, 1914, and Dyer paid the second ten thousand dollars July 1, 1914, he waived Green's breach and could not rely upon it to defeat the October payment. From the findings it does not appear what actuated Dyer to make the July payment. In support of the judgment it may be inferred that the circumstances were such that Dyer did not waive any of his rights. Even though the second payment was voluntary, that alone would not bind him to make the third payment. The mere fact of paying one of a series of installments conditioned upon the performance of an act by

the payee does not constitute a waiver either of the right to have the act performed or the correlative right to refuse to make further payments until it is performed. [5] The fact that Dyer was entitled to complete performance before the second payment was made did not relieve Green from the duty to finish the work. Time was not of the essence of this condition of the contract, and Green might have performed after June 1, 1914. (Civ. Code, sec. 1492.) Dyer was not obligated to make any payment except the first until the plants were completed. After June 1, 1914, every day's failure on the part of Green to do the work was a breach of the contract, and the fact that Dyer may have waived the breach up to July 1st did not preclude him from refusing to make the October payment because of the continuing breach. (*Woodard* v. *Glenwood etc. Co.*, 171 Cal. 514, [153 Pac. 951].)

It is further argued that since the bank was not the assignee of the entire contract, Dyer could not offset against its claim Green's failure to complete the billboards. It does not appear that Dyer is seeking to offset anything against the bank's claim. Under the terms of the contract the October payment never matured. It was not to be made unless Green completed the billboards, and the bank knew this when it took the note.

The judgment is affirmed.

Langdon, P. J., and Haven, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 6, 1919.

All the Justices concurred.