[Civ. No. 4367.  Second Appellate District, Division One.—April 24, 1924.]

## L. F. DOLLEY et al., Respondents, v. EDWARD D. RAGON et al., Appellants.

[1] PLEADING—SUPPLEMENTAL COMPLAINT—EVIDENCE.—Where a complaint is unobjectionable, a supplemental pleading may be filed in aid thereof, which, leaving the original complaint intact, brings to notice material facts relating to the case, alleged to have occurred after the commencement of the action, but which may

---

1. See 21 R. C. L. 503.

materially affect the rights of the plaintiff; and, where the filing of a supplemental complaint is authorized, evidence affecting its allegations is properly admitted.

[2] LEASES—ACTION TO TERMINATE—BREACH—TIME—EVIDENCE—INSTRUCTIONS.—In this action to terminate an oil lease because of the failure of the defendants to commence active development work on the land on or before a given date, and thereafter to prosecute said work diligently and continuously and in good faith, the plaintiffs, by supplemental complaint, having · pleaded the failure of the defendants to prosecute the work diligently after the action was commenced, it was not error to direct the attention of the jury to an alleged breach of the covenant of the lease said to have occurred before the action was commenced, and inform the jury that in determining that particular fact it should not take into consideration evidence of what, if anything, occurred thereafter, but for the alleged breach occurring after the action was commenced, under the allegations contained in the supplemental pleading, it could properly consider such evidence.

[3] ID.—ISSUES—CUMULATIVE EVIDENCE—STIPULATION OF COUNSEL.—In such action, where the answer of the defendants, besides specifically denying the allegations of the complaint, set up certain affirmative allegations, among which was an averment that certain machinery had been purchased by the defendants prior to the commencement of the action, the admission in evidence of a stipulation entered into by the attorneys for the parties in a certain claim and delivery action to recover such machinery, by which stipulation it was agreed that the plaintiff in that action was the owner of the machinery and that if defendants failed to make a certain payment by a given date said plaintiff might resume possession thereof, did not justify an order of reversal of the judgment, where the trial court limited the effect of such stipulation to proof of the fact that the machinery was not purchased by defendants until after the action was commenced, and its effect was only cumulative to other evidence going to the main issue as to whether the work had been prosecuted diligently and continuously and in good faith.

[4] ID.—CONSTRUCTION OF DERRICK—KNOWLEDGE OF PRIOR BREACH—ESTOPPEL.—The fact that plaintiffs, with knowledge of a prior breach of the lease by defendants, permitted defendants to proceed with the erection of a derrick, did not estop plaintiffs to object to delays in the development work prior to the time the work was ac-

2. Covenant for diligent prosecution of work in oil lease, notes, 20 Ann. Cas. 1165, 1168; Ann. Cas. 1917E, 1120. See, also, 18 R. C. L. 1212.

3. See 2 Cal. Jur. 1020; 2 R. C. L. 250.

4. See 18 R. C. L. 1212.

tually started in the construction of the derrick, where the lease provided that defendants should commence active development work on or before a given date, and thereafter prosecute said work diligently and continuously and in good faith, and there was no provision which required plaintiffs to give notice to defendants of any claim on the part of plaintiffs that defendants either were violating or had violated the terms of the lease.

[5] ID.—ACTION TO TERMINATE—CONJECTURAL EVIDENCE.—In an action to terminate an oil lease because of the failure of the defendants (lessees) to comply with the terms thereof, the proposition that, if plaintiffs had consented to an assignment of the lease to a corporation to be organized and had not brought suit to terminate the lease, money would have been available for diligent operation under the lease, is so uncertain, so problematical and so incapable of ascertainment that no reasonable basis is afforded for the admission of evidence tending to establish the suggested conclusion.

[6] ID.—CHARACTER OF OIL FIELD—MOTIVE FOR TERMINATING LEASE—IMMATERIAL EVIDENCE.—The oil lease having provided that defendants should commence active development work on or before a given date, and thereafter prosecute said work diligently and continuously and in good faith, in an action by the lessors to terminate said lease because of the failure of the lessees to comply with the provisions thereof, it was not error to refuse defendants permission to show that the leased land was undeveloped territory at the time the lease was executed, that thereafter, and prior to the refusal of plaintiffs to consent to the assignment of the lease to a corporation to be organized, the leased land had become a proven oil field, that prior to the filing of the complaint plaintiffs had been approached by another oil company which had offered a large bonus for a lease on the land, and that said oil company had agreed to finance the bringing of the action for the cancellation of the lease between plaintiffs and defendants.

[7] ID.—UNAVOIDABLE DELAYS—EVIDENCE—INSTRUCTIONS.—In such action, the trial court did not commit error in failing to instruct the jury to the effect that a compliance by defendants with the terms of the lease would be excused in the event of unavoidable delays and accidents preventing such compliance, where such an instruction was not requested by defendants, and there was no evidence of any accidents, or of any unavoidable delays, other than such as were attributable to defendants' lack of money with which to carry on the work.

[8] ID.—DEFINITION OF DILIGENCE—CONSTRUCTION OF LEASE—INSTRUCTIONS.—The oil lease having provided that defendants should

7.   See 6 Cal. Jur. 433; 14 R. C. L. 795; 6 R. C. L. 997.

prosecute the work "diligently and continuously and in good faith," and having further provided that nothing but "substantial work and continuous operations under the terms of this lease shall be considered as a compliance with the terms hereof," and the trial court having instructed the jury that unless they found from the evidence that substantial work was done on the premises and that continuous operation was carried on as provided by the terms of the lease, the verdict should be for plaintiffs, the trial court did not err in refusing to give to the jury at the defendants' request an instruction defining the word "diligence" as a "steady application, a constant effort to accomplish the undertaking" and, in addition to such definition, refusing to instruct the jury that "the law does not require unusual or extraordinary efforts, but only that which is usual, ordinary and reasonable."

[9] APPEAL—PRESENTATION OF POINTS.—On appeal, points suggested by appellants, but which are neither argued nor seriously presented in any way, are entitled to no consideration.

---

(1) 31 Cyc., pp. 502, 505, 684 (1926 Anno.).    (2) 27 Cyc., p. 734. (3) 4 C. J., p. 971, sec. 2952; p. 994, sec. 2975.    (4) 27 Cyc., p. 739 (1926 Anno.).    (5) 27 Cyc., p. 734.    (6) 27 Cyc., p. 734.    (7) 38 Cyc., pp. 1618, 1693.    (8) 27 Cyc., p. 734.    (9) 4 C. J., p. 1069, sec. 3057.

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

Everett S. Ball, Wm. J. Clark and P. V. Davis, for Appellants.

G. P. Adams and W. W. Orme for Respondents.

HOUSER, J.—The purpose of this action was to terminate an oil lease entered into between plaintiffs and the individual defendants. By the terms of the lease the said defendants bound themselves to commence active work developing the land for oil on or before April 1, 1921, and thereafter "to prosecute said work diligently and continuously and in good faith." The lease contained the further provision that "nothing but substantial work and continuous operations under the terms of this lease shall be considered a compliance with the terms hereof." The action was tried before a jury to which certain special issues

were submitted, and the jury specifically found in substance that the defendants had violated the terms of the lease in that the defendants had failed to prosecute the work diligently and continuously and in good faith.

[1] The first objection to the judgment which is presented by appellants' brief is that the trial court erred in permitting evidence to be introduced in support of the allegations contained in a supplemental complaint which was filed by plaintiffs. Authorities are cited by appellants which go to the point that where the original complaint fails to state a cause of action no relief can be granted on a supplemental complaint; and of course, in such circumstances, evidence affecting the allegations contained in the supplemental complaint would be improperly received. But no such condition is presented by the pleadings herein; indeed, the sufficiency of the original pleading is unquestioned. The rule appears to be that where a complaint is unobjectionable, a · supplemental pleading may be filed in aid thereof, which, leaving the original complaint intact, brings to notice material facts relating to the case, alleged to have occurred after the commencement of the action, but which may materially affect the rights of the plaintiff. (Sec. 464, Code Civ. Proc.; *Giddings* v. *The 76 Land & W. Co.*, 109 Cal. 116 [41 Pac. 788]; *California Farm etc. Co.* v. *Schiappa-Peitra*, 151 Cal. 732 [91 Pac. 593].)

The supplemental pleading here being authorized by statute as well as by judicial interpretation, evidence affecting its allegations was properly admitted.

[2] Appellants complain of error in that the jury was instructed that in determining whether or not the defendants prosecuted the work of developing plaintiffs' land for oil, gas or other materials diligently and continuously and in good faith *prior* to the commencement of the action, the jury should not consider what was done by the defendants in connection therewith *after* the action was commenced. The criticised instruction contains the further statement that "Now, that does not mean that you are not to consider at all whether there was a failure to prosecute the work diligently and continuously after the suit was brought, but it simply means that in determining whether it was so prosecuted before the suit was brought, you are not to consider what came afterwards." The instruction directed the

attention of the jury to an alleged breach of the covenant of the lease said to have occurred before the action was commenced, and informed the jury that in determining that particular fact it should not take into consideration evidence of what, if anything, occurred thereafter; but for an alleged breach occurring after the action was commenced, under the allegations contained in the supplemental pleading, it could properly consider such evidence. In view of what has heretofore been said with reference to the allegations contained in the supplemental complaint and which related to the failure of defendants to prosecute the work diligently after the action was commenced, we are unable to agree with counsel for appellants in his contention as to the impropriety of the instruction of which complaint is made.

[3] This action was commenced on July 13, 1921. The burden of the complaint was that up to that time the defendants had breached the covenant contained in the lease calling for diligent and continuous work. The answer of the defendants, besides specifically denying the allegations of the complaint, set up certain affirmative allegations, among which was the averment that certain boilers, feed pumps, fittings and hand-tools had been purchased by the defendants prior to the date of the commencement of the action, looking to the performance by them in good faith of the conditions imposed upon them by the terms of said lease. It appears that only a partial payment had been made by the defendant Signal Hill Oil Company on the purchase price of the articles to which reference has been made, and that an action in claim and delivery had been brought by the vendors to recover possession of the same. On the trial of the instant case, plaintiffs offered in evidence a stipulation which had been entered into between the parties in the claim and delivery action, to the effect that the plaintiff therein was the owner of the property referred to in the action; that in consideration of such plaintiff abstaining from further proceedings for a period of about three weeks, he might resume possession of the said personal property, provided that in the meantime the defendants had not paid to said plaintiff the sum of $4,089, with costs of court; and that upon the failure of the defendants to make such payment, plaintiff should have judgment. Objection was

made to the introduction of the stipulation—the basis of the objection being that inasmuch as the stipulation was signed by the attorneys representing the respective parties in that action and that it provided for a confession of judgment to be taken against the defendants which was unauthorized by the defendants personally, the stipulation was of no validity. In ruling upon the objection, the judge of the trial court made the following statement: "I don't believe that the fact that a lawyer is employed to contest a case gives him authority to stipulate his client's rights away; objection sustained." And the court limited the effect of the stipulation by the further statement that, "I am only admitting it for the purpose of showing that those things were not purchased until about the 23rd of July," which was a date ten days after the commencement of the action in the instant case. The evidence merely tended to disprove the averments contained in the answer, to the effect that those articles had been purchased *before* the action was commenced. The final objection of defendants' attorney to the introduction of the stipulation in evidence, that it was not proper under the supplemental complaint, was overruled by the court. But, as heretofore shown, it was not a stipulation for judgment in the claim and delivery action, but only the implied fact arising out of the stipulation (which was annexed as an exhibit in another case) that the articles had not been purchased at the time when it was alleged in the instant case that they had been purchased, which was permitted to go to the jury. Limited as was the stipulation to its tendency to prove that particular fact, its effect was only cumulative to the mass of other evidence going to the main issue in the original complaint, namely, that up to the time the action was commenced the work had not been prosecuted diligently and continuously and in good faith, as defined by the provision of the lease that "nothing but substantial work and continuous operations" should be considered as a compliance with the terms thereof. Under such conditions, even assuming the correctness of appellants' contention (which point becomes unnecessary of decision), the admission of the stipulation for the purpose stated by the trial judge is not of that consequence which would justify an order of reversal of the judgment.

[4] Error is predicated upon the refusal by the court to give to the jury, at the defendants' request, an instruc-

tion to the effect that plaintiffs were estopped by virtue of their conduct to object to any noncompliance with the terms of the lease by the said defendants prior to the commencement of the construction of the derrick on said property.

The answers of the jury to the several special interrogatories submitted to it show that, although the lease was executed on December 22, 1920, the defendants were not obliged to commence actual work to develop the land in controversy for oil or gas before April 1, 1921; that after work was commenced it was not prosecuted diligently and continuously and in good faith until the suit was brought on July 13, 1921; but that there was "continuous substantial work done on the property from the time the construction of the derrick was begun until it was completed." The evidence tends to show that the derrick occupied about three weeks in building, and that it was completed on or before the fifteenth day of June, 1921; that twenty-eight days elapsed between the date of the completion of the derrick and the date when the action was commenced; and that plaintiffs were frequently on the premises and at all times observed what progress was being made by the defendants in carrying out the covenants of the lease. Appellants urge that in such circumstances, plaintiffs being cognizant of all the facts, could not permit the defendants to proceed with the erection of the derrick and afterward object to delays in the development prior to the time the work was actually started in the construction of the derrick. But the lease itself contains no provision which requires plaintiffs to give notice to the defendants of any claim on the part of plaintiffs that the defendants either were violating or had violated the terms of the lease. Whatever were the difficulties or the problems which beset the defendants in connection with the work were of their own making. The evidence clearly shows that none of the defendants possessed any capital; or at least that if any of them had any assets, he was either unwilling or unable to put any considerable part thereof into this enterprise. The necessities of the defendants were merely the result of their own rashness in undertaking a large project when there appeared to be no certainty of financing the proposition. By admitting appellants' suggestion as being a correct statement of the law, it would follow that any act, however slight and incon-

sequential, performed by the defendants with the knowledge of plaintiffs in furtherance of the terms of the lease, even at the very last moment before action was commenced, would preclude plaintiffs from asserting their rights and from proving on the trial of the case whatever may have been the facts with reference to the inactivities of the defendants theretofore in connection with the development of the property. For example, let it be assumed that up to one week preceding the date when action was commenced nothing whatsoever had been done by the defendants with reference to carrying out the covenants of the lease requiring diligence and continuous work in the matter of the development of the land; let it further be assumed that on that day, to the knowledge of plaintiffs, the defendants delivered a load of lumber on the premises and actually commenced the erection of a derrick thereon: Could it then rightfully be assumed that plaintiffs, because of their knowledge of the facts, should be estopped to prove on the trial the delays and the inactivities of the defendants preceding the delivery of the lumber on the premises? It should be remembered that the claim of plaintiffs is not that *no* work was done by the defendants, but rather that the defendants failed "to prosecute said work diligently and continuously and in good faith." In such circumstances the fact that *some* work was done, however important, is not an answer to plaintiffs' contention that the provision of the lease requiring diligent and continuous work in good faith was violated. Estoppel is based upon principles of equity; but it would be most inequitable and unjust to preclude plaintiffs here from showing just what were the facts relating to the acts of the defendants in connection with their attempted compliance with the requirements of the lease from its inception until the date when the action was commenced.

[5] Appellants next contend that the trial court erred in refusing to permit the defendants to introduce testimony offered to the effect that had plaintiffs consented to an assignment of the lease, and had this action not been commenced, money would have been available for diligent operation under the lease.

By the terms of an instrument signed by plaintiffs, it was agreed that under certain conditions therein expressed plaintiffs would consent to an assignment of the lease by

the defendants to a corporation to be organized by the lessees, to be known as the Signal Hill Oil Company (one of the defendants herein); also,

"This consent to an assignment shall not be effective until the form of said assignment is submitted to the undersigned and approved in writing by them, nor unless the said Signal Hill Oil Company is organized and empowered to do business by the corporation commissioner of the state of California within thirty days from the date hereof."

The date of the instrument referred to was uncertain in that the date appeared as "this —— day of February, 1921." No attempt was made to show that the corporation was ever "empowered to do business by the corporation commissioner of the state of California"; nor was it shown that any form of assignment was ever submitted to plaintiffs; nor that they refused to approve any form of assignment. On the other hand, it clearly appears from the record herein that the defendants were afforded every reasonable opportunity to show that plaintiffs refused to consent to an assignment of the lease. The only instrument submitted by the defendants to plaintiffs for their approval was a drilling contract entered into between the individual defendants as parties of the first part, and Signal Hill Oil & Gas Company, as party of the second part, and the evidence is to the effect that plaintiffs orally assented to its terms; and the evidence is very uncertain that plaintiffs ever refused to approve in writing even the drilling contract. Of course, it is manifest that the bringing of the suit could in no way have affected the defendants in any efforts which they might have seen fit to exert in the way of raising money *before* the suit was brought. The proposition that *if* such consent had been given by plaintiffs, and *if* said suit had not been brought, the defendants could have shown that money would have been available for the diligent operation of the lease, is so uncertain, so problematical and so incapable of ascertainment that no reasonable basis is afforded for the admission of evidence tending to establish the suggested conclusion. At most, evidence of such a nature would necessarily have consisted of opinions of witnesses of what *might* have occurred in a given contingency. It would have been in the nature of a prophecy, and in this day

and generation such matters are neither given, nor are they entitled to, very great consideration.

[6] Appellants complain that the trial court was in error in refusing permission to the defendants to show that the leased land was undeveloped territory at the time the lease was executed; that thereafter and before plaintiffs refused to consent to the "assignment" to which reference has heretofore been made, the leased property had become a proven oil field; that prior to the filing of the complaint plaintiffs had been approached by another oil company which had offered plaintiffs a large bonus for a lease on the land in question and that said oil company had agreed "to finance the bringing of an action for the cancellation" of the lease between plaintiffs and the defendants.

Assuming that each of the foregoing facts might have been established, just what bearing either or all of them would have had upon the main issue as to whether or not the work had progressed with diligence is not pointed out; neither is it apparent to this court; nor does the record entirely comport with appellants' contention that evidence of each of those facts was not permitted by the court to be introduced. As to the first point, the evidence is clear that the territory was as is claimed by appellants. As to the second point, this court has been unable to locate in the record any attempt on the part of either counsel, other than certain photographs which were offered and received in evidence, which would have even tended to show that the land ever became proven oil territory. Regarding the third point, as heretofore indicated, we are unable to perceive that the court committed any error in rejecting defendants' offer to prove same.

[7] Appellants further contend that the court erred in that the instructions to the jury did not contain any admonition to the effect that a compliance by the defendants with the terms of the lease would be excused in the event of unavoidable delays and accidents preventing such compliance. Counsel for appellants fails to show that any such instruction was requested by him on the trial of the case. Nor is it claimed that there was any evidence of any accidents, nor of any unavoidable delays, other than such as may have been occasioned possibly by scarcity of materials, condition of the roads, or of the soil, making difficult the de-

livery of materials on the leased premises. By the great preponderance of the evidence it was shown that such claimed conditions were not genuine, but that all such delays were wholly attributable to defendants' lack of money with which to carry on the work. Besides, the finding by the jury that continuous substantial work was not. done on the property between April 1st and July 13th negatives appellants' contention that any real endeavor was made by the defendants to overcome such obstacles. No authorities are cited by appellants to sustain their position that delays of the sort mentioned by them constituted "unavoidable delays," within the legal meaning of the words, and we know of none which would make the principle for which appellants contend applicable to even the facts as presented by defendants' witnesses.

[8] The last contention on the part of appellants is that the trial court erred in refusing to give to the jury at the defendants' request an instruction defining the word "diligence" as a "steady application, a constant effort to accomplish the undertaking"; and in addition to such definition, refusing to instruct the jury that "the law does not require unusual or extraordinary efforts, but only that which is usual, ordinary and reasonable." On this point the jury was instructed that unless the jury found from the evidence that substantial work was done on the premises and that continuous operation was carried on as provided by the terms of the lease, the verdict should be for plaintiffs. It will be remembered that by the terms of the lease the defendants were required to "prosecute said work diligently and continuously and in good faith." The lease also undertakes to define what is meant thereby in the following language: "Nothing but substantial work and continuous operations under the terms of this lease shall be considered as a compliance with the terms hereof." Any other definition of what was meant by the language of the contract would be to place an interpretation upon the contract which was never contemplated by the parties to it. They said exactly what was meant when they said that *substantial* work and *continuous* operation was the meaning of the terms employed. For a trial court, or for any other court, to say that something greater or something less than "substantial work and continuous operation" was what the parties in-

tended would be in effect to make a different contract for the parties. The jury found that the defendants did do "substantial work" in the matter of the construction of the derrick, only, and that what other work was performed by them was not done continuously nor in good faith. Such a finding negatives any effect which possibly might have resulted from an instruction that all that was required was the "usual, ordinary and reasonable" effort on the part of the defendants as outlined by the refused instruction.

[9]  Other points suggested by appellants are neither argued nor seriously presented in any way. In such circumstances, under the rule frequently announced by the supreme court of this state, such alleged errors are entitled to no consideration. (*Brown* v. *Tolles*, 7 Cal. 398; *People* v. *Woon Tuck Wo*, 120 Cal. 294 [52 Pac. 833]; *Taylor* v. *Bell*, 128 Cal. 306 [60 Pac. 853]; *People* v. *McLean*, 135 Cal. 306 [67 Pac. 770]; *People* v. *Chutnacut*, 141 Cal. 682 [75 Pac. 340]; *Bell* v. *Southern Pacific R. R. Co.*, 144 Cal. 560 [77 Pac. 1124]; *Pigeon* v. *Fuller*, 156 Cal. 691 [105 Pac. 976]; *Born* v. *Castle*, 175 Cal. 680 [167 Pac. 138]; *People* v. *Clark*, 183 Cal. 677 [192 Pac. 521]; *Frazier* v. *David*, 187 Cal. 724 [204 Pac. 17].)

The judgment is affirmed.

Conrey, P. J., concurred.

Mr. Justice Curtis, deemed himself disqualified, and did not participate in the foregoing opinion.

A petition for a rehearing of this cause was denied by the district court of appeal on May 20, 1924, and a petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 23, 1924.

All the Justices concurred.