ORVILLE E. BRYAN, Respondent, v. SOLOMON BUNIS and Another, Appellants.

Fourth Department, March 12, 1924.

Motor vehicles — action to recover for injuries suffered when defendants' motor truck driven by employee struck plaintiff — employee after driving one of defendants to his home at noon was told to take truck to shop — employee started for his own home for dinner and while thus deviating about one-half mile from route to shop accident occurred — employee was within his employment at time of accident — defendants are liable.

In an action to recover damages for injuries suffered by the plaintiff when he was struck by defendants' motor truck, which was being driven by an employee of the defendants, the employee was within the scope of his employment at the time of the accident and the defendants are liable, since it appears that the employee took one of the defendants home in the truck at noon and was told to return the truck to the shop; that the employee instead of returning by the shortest route to the shop started for his own home for his dinner, and the accident occurred while he was thus deviating from the direct route to the shop, and that said deviation was approximately one-half mile from the direct route.

The comparatively slight deviation by the employee from the direct route back to the shop in order that he might obtain his usual noonday meal was not an engagement in a new, independent enterprise, or an abandonment of his master's work.

APPEAL by the defendants, Solomon Bunis and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Ontario on the 28th day of May, 1923, upon the verdict of a jury for $350.

*Lapham, McGreevy & Ryan* [*James M. Ryan* of counsel], for the appellants.

*W. Smith O'Brien*, for the respondent.

DAVIS, J.:

On September 30, 1922, Solomon Bunis, one of the defendants, directed Charles Evans, an employee, to take him from the shop on Wadsworth street in the city of Geneva, to the Bunis home on North Main street in the automobile truck owned by defendants. The hour was about noon. Bunis then told Evans to take the truck back to the shop. Instead of returning directly, Evans started to go home for his dinner. This involved a deviation from the direct route. At the corner of Linden and Castle streets, about one-half mile from the Bunis residence, the truck collided with the plaintiff. The latter has recovered damages from the defendants for injuries sustained. They deny liability for the acts of Evans under these circumstances.

Since 1834 when Baron PARKE, in discussing the liability of a master, made a distinction between a " frolic " and a " detour " in the case of *Joel* v. *Morison* (6 C. & P. 501), the question as to just what constitutes a " frolic " and what a " detour " has been a perplexing one. (See " Frolic and Detour," 23 Columbia Law Review, 444, 716.) In the one case the master is not liable for his servant's misconduct. In the other, the doctrine of *respondeat superior* is applied.

There is in such cases no broad line of demarcation separating the doctrine of liability and non-liability. It often becomes shadowy and indistinct. To a large extent each case must be decided upon its own peculiar facts. In general, it is said that to hold the master liable, the servant must be definitely engaged in the master's work. Mere deviation from the ordinary route or from that selected by the master, even for a purpose conceived by the servant, does not relieve the master from liability if his business, generally speaking, is still being carried on. (*Quinn* v. *Power*, 87 N. Y. 535; *Clawson* v. *Pierce-Arrow Motor Car Co.*, 231 id. 273.) And if the work, though temporarily abandoned, has been resumed, the same rule applies. (*Jones* v. *Weigand*, 134 App. Div. 644.) A deviation for a casual visit constitutes merely misconduct in the servant's employment and not an abandonment thereof. (*Williams* v. *Koehler & Co.*, 41 App. Div. 426.) The deviation by a servant of a few blocks for ends of his own does not relieve the master of liability. (*D'Aleria* v. *Shirey*, 286 Fed. Rep. 523.)

But the mere fact that the injuries were caused by the servant during his period of employment does not make the master liable, where it clearly appears that at the time he was not acting for the master or within the scope of his employment (*Reilly* v. *Connable*, 214 N. Y. 586; *Perlmutter* v. *Byrne*, 193 App. Div. 769); nor is the master liable if the servant has abandoned his work and

engaged in an independent enterprise of his own (*O'Brien* v. *Stern Brothers*, 223 N. Y. 290); likewise, when the injury occurs in the evening after the chauffeur's work is over and he has possession of his employer's automobile without the master's consent. (*Der Ohannessian* v. *Elliott*, 233 N. Y. 326.) Where there is a long and unnecessary divergence from the course prescribed, the master is relieved from liability (*Benevento* v. *Poertner Motor Car Co.*, 235 N. Y. 125); and a departure by the servant from the ambit of his duty to engage in a frolic has the same effect. (*Fiocco* v. *Carver*, 234 N. Y. 219.)

In determining whether or not liability exists under given circumstances, no hard and fast rule on the subject, either of time or space, can be applied. The choice of a different way back does not, as a matter of law, constitute an abandonment of the master's work. (*Riley* v. *Standard Oil Co.*, 231 N. Y. 301, 305.) Courts will not be limited by tests that are merely mechanical or formal; and its judgment, though it may be guided by location in time and space, will not be controlled by such circumstances if there are others that characterize the intent of the transaction. (*Fiocco* v. *Carver, supra,* 223.)

In this case the defendant directing the servant's movements, knew that the usual hour of meal time was at hand. He knew where the chauffeur lived. Certain employees are by law given a fixed period for the noon-day meal. (Labor Law of 1921, § 162.) Custom has decreed a similar period for others. This defendant knew that Evans was allowed the time from twelve to one for such purpose. The comparatively slight deviation by Evans of a half mile from the direct route back to the shop in order that he might obtain his usual noon-day meal, was not an engagement in a new, independent enterprise, or an abandonment of his master's work. It was a part of his daily duty, and when his employer took him from the shop at the noon hour and after his immediate errand was performed, directed him to return, it was within his contemplation that the ambit of the chauffeur's duty would not require him to be back at the shop until one o'clock, and that in the meantime at some place, presumptively his home, he would obtain his midday meal. His employment was not changed, at least as a matter of law, by going to his home on this errand. (*Pallocco* v. *Lehigh Valley R. R. Co.*, 236 N. Y. 110.) To go at the usual time for a meal (*Sundine's Case*, 218 Mass. 1) and to his home after the day's work is done (*Erie R. R. Co.* v. *Winfield*, 244 U. S. 170) are incidents of employment.

We have recently held that a slight deviation, even for the servant's own benefit, from the course of work required by the

master will not necessarily relieve the master from the liability for an accident occurring during such deviation. (*Bush* v. *Sinclair-Rooney & Co.*, 207 App. Div. 699.) The jury has found here under proper instructions that Evans had not abandoned the employment of the defendants when the accident occurred. The deviation, therefore, was but temporary and the objective of Evans was the shop to which his duty and his master's direction called him at one o'clock.

The judgment should be affirmed.

All concur.

Judgment affirmed, with costs.