[Civ. No. 2765. Third Appellate District.—June 22, 1925.]

## BELLE DENNIS, Respondent, v. MILLER AUTOMOBILE COMPANY (a Corporation), Appellant.

[1] NEGLIGENCE — AUTOMOBILE COLLISION — SCOPE OF EMPLOYMENT— CONCLUSIONS OF WITNESS—PROVINCE OF COURT AND JURY.—In an action for damages for personal injuries sustained by a pedestrian as the result of a collision between two automobiles, neither the court nor the jury is bound by the conclusions of the driver of defendant's truck as to whether at the time of the accident he was performing duties within the scope of his employment, but they are there for the purpose of drawing their own conclusions from the facts.

[2] ID.—PERFORMANCE OF DUTIES—DEVIATION FROM USUAL COURSE— SCOPE OF EMPLOYMENT—INSTRUCTIONS.—In this action for damages for personal injuries sustained by a pedestrian as the result of a collision between two automobiles, notwithstanding the conclusion of the driver of defendant's truck that at the time of the accident he was not performing duties within the scope of his employment, the evidence having shown that he was on his way to the express company with two packages belonging to defendant, that he was performing his duties, but took a different course than usual to the express office to accommodate other employees of defendant who were on their way home, and that while engaged in the performance of the services and rendering the accommodation the collision occurred, the trial court did not err in leaving to the jury, by proper instructions, the determination of the fact as to whether said driver was or was not performing a service for defendant within the scope of his employment at the time of plaintiff's injury.

1. See 16 Cal. Jur. 1111; 18 R. C. L. 796.

2. Liability of owner for injuries by automobile while being used by a servant or third person for his own business or pleasure, notes, 1 L. R. A. (N. S.) 235; 9 L. R. A. (N. S.) 1033; 14 L. R. A. (N. S.) 216; 21 L. R. A. (N. S.) 93; 26 L. R. A. (N. S.) 382; 33 L. R. A. (N. S.) 79; 37 L. R. A. (N. S.) 834; 47 L. R. A. (N. S.) 662; L. R. A. 1916A, 957; 22 A. L. R. 1397; 3 Cal. Jur. 867; 2 R. C. L. 1199; 18 R. C. L. 814.

APPEAL from a judgment of the Superior Court of Sacramento County. Malcolm C. Glenn, Judge. Affirmed.

(1) 39 C. J., p. 1362, n. 22. (2) 39 C. J., p. 1360, n. 60.

The facts are stated in the opinion of the court.

Irving D. Gibson for Appellant.

George D. Work and Thomas Ashby for Respondent.

PLUMMER, J.—On the sixth day of December, 1922, the plaintiff was injured as the result of a collision between two automobiles, one owned by the appellant, Miller Automobile Company, and the other by the defendant, S. S. Albright Company. The collision occurred at the intersection of Tenth and S Streets in the city of Sacramento. Plaintiff obtained judgment against the appellant, Miller Automobile Company, for the sum of $1,800. From this judgment the Miller Automobile Company appeals. No issue is raised as to the sufficiency of the evidence to justify the findings of negligence on the part of the driver of the Miller Automobile Company, nor is any issue tendered as to the extent of the injuries suffered by the plaintiff, it being apparent that the amount of the damages awarded are very reasonable in view of the extent of the injuries suffered by the plaintiff. At the conclusion of the introduction of the plaintiff's testimony the trial court granted a nonsuit to the S. S. Albright Company and continued the action against the appellant, Miller Automobile Company. The only question tendered for decision upon this appeal is whether or not the driver of the Miller Automobile Company, one Arthur W. Stephen, a boy of nineteen employed in appellant's stockroom, was at the time of the accident performing duties within the scope of his employment.

The transcript shows that Arthur W. Stephen, the driver of appellant's car, was in the employ of the appellant on the day of the accident, that as part of his ordinary duties he regularly took express packages belonging to the appellant to the American Express Company situate at Second and B Streets, in the city of Sacramento, that he ordinarily started on one of his trips to deliver express packages at the hour of about 11:30 A. M., that in making these trips he used a delivery truck which was kept in the alley at Sixteenth Street, between L and M Streets, that on the day in question he had gone to the place where the delivery truck was kept, had placed in the truck two packages belonging to

the Miller Automobile Company for the purpose of delivering the same at the express office above mentioned, that he had started his car and was about to proceed on his mission when two boys, employees of the Miller Automobile Company, came out of the building where the truck was kept and asked Stephen to drive down past their homes. In reply Stephen told them he would go down with the packages, but would take them to their homes and then deliver the packages afterward. The homes of the two boys who accompanied Stephen were situate on Sixth and S Streets. After the boys had gotten into the automobile Stephen drove south on Sixteenth Street to S Street and thence westerly on S Street until he reached the intersection of S and Tenth Streets, where the collision resulting in the injuries to the plaintiff, who was a pedestrian on the sidewalk at that place, occurred.

So far as this action is concerned, it may be said that the streets of the city of Sacramento from B to S Streets, inclusive, running easterly and westerly are all lettered, and the streets running northerly and southerly are numbered from Second to Sixteenth. All streets running westerly within the letters above named intersect streets running northerly and southerly, so that the express office of the American Express Company, located at Second and B Streets, may be readily reached. It further appears from the transcript that the driver of the appellant's car, in taking express matter from the point on Sixteenth Street, between L and M Streets, ordinarily traveled northerly on Sixteenth Street to J Street, thence westerly on J Street to the intersection of Second Street, and thence northerly to the express office at B Street; that on the day in question he first drove the machine southerly to S Street on Sixteenth Street, a distance of six and one-half blocks, and then turned westerly on S Street, and was proceeding on his journey to the express company's office, having with him the two express packages and the two boys, that this departure or deviation from his usual course to the express office was for the purpose of accommodating the two boys, in taking them to their homes, where they were going to get their lunches.

As the argument of both appellant and respondent is based principally upon the testimony of the driver of ap-

pellant's automobile, we will set forth the salient portions thereof:

"I was working for the Miller Automobile Company on the 6th day of December, 1922; I was working in the store-room; I was driving an automobile owned by the Miller Automobile Company; the collision occurred at the corner of S and 10th street in the city of Sacramento; I was proceeding west on S street; I had come from 16th street between L and M, that is, where we kept our trucks; there were two boys, Clarence Logan and Melvin Bowen with me; I entered my car at almost 12 o'clock; I entered the car first to take my express down to the office; I had a couple of parcels to deliver and I started the machine and was just about to leave when these two boys came out; I was originally going by myself when these two boys came out and asked me if I would take them down to the vicinity of their homes for lunch. My purpose in entering the car, was to take some express down to the express office; these boys came out and asked if they might ride with me; I told them I had to go down with the packages, that I would take them to their homes and then deliver my packages afterwards; I had no objection to taking the boys home; the taking of express packages was one of my ordinary duties; I usually go down J street and go right to 2nd street, and then over to the express office; I would not have gone down 16th street to S and turned on S street west if I had not been taking these boys home; otherwise, I would have gone down M street. I made the trip, so far as the Miller Automobile Company was concerned in this way, on my own initiative."

On examination by appellant's counsel the witness further testified: "Q. Mr. Stephen, at the time that this collision occurred, you were on your way to take the boys to their homes, were you not? A. I was. Q. That is what you were using the car for at that time? A. Yes. Q. That is what you were driving over 16th street to S street for? A. Yes. Q. And then out S street to where the accident occurred? A. Yes, sir. Q. That was no part of your duties as an employee of the company, was it? A. No, sir. Q. You were taking the young men down there purely for their convenience and accommodation, were you not? A. Yes, that is why I was taking them—; Q. Mr. Stephen, would you have gone from 16th street and turned on S

street west, if you had not been taking those boys to their homes? A. No, sir. Q. That was the purpose for which you went down S street? A. Otherwise I would have gone down J. Q. That was the purpose for which you were using the car at the time this collision occurred, was it not—taking these boys down to their homes? A. Yes, sir. Q. There was no business or duties connected with the Miller Automobile Company, that took you down S street with the car at that time, was there? A. No, there was not.''

Only one of the boys who made the journey with Stephen on the trip in question was alive at the time of the trial and he testified as to requesting the driver to go by way of their homes, and as to the automobile being driven southerly on 16th Street, and thence westerly on S Street to the place of the collision. **[1]** It will be observed from the foregoing testimony that the witness Stephen was permitted not only to state the facts of his own journey, the taking of the automobile, the taking of the express packages and the taking of the two boys and the course of his journey, but also to state his conclusions as well. Although some of the witness' conclusions are stressed in the argument, it is almost unnecessary to say that neither the court nor the jury are bound by the conclusions of a witness, but are there for the purpose of drawing their own conclusions from the facts. In the first place, it is evident from the facts that the driver of the appellant's automobile would probably have taken some other street on his westward journey to the American Express office, but the fact is also disclosed that he was taking the two express packages with him and was on his way to the American Express Company's office, even though he had departed from his usual course and was making a short detour to accommodate two other employees of the appellant. From the time the automobile, which the witness Stephen was driving, reached the intersection of Sixteenth and S Streets, it was proceeding as directly toward the ultimate destination, to wit: the American Express office, contemplated by the driver, as though he had been driving westerly on any other one of the parallel streets in the city of Sacramento lying between B and S Streets therein. It is evident that the driver of the appellant's automobile had not abandoned his purpose of taking the packages to the express office, but was simply accomplishing a double pur-

pose, he was taking both the two packages and the two boys. There would be no return to the point of departure, there would simply be a continuation of his journey westerly on S Street to the intersection of Second Street, and thence northerly to the express office, or to some other intersecting street leading to the express office which might chance to attract the fancy of the driver. There is nothing in the transcript which shows that the appellant had ever given the driver of the automobile in question any orders as to the streets over which he should travel in delivering the express packages, and so far as the record shows he was free to choose any one of them that he found convenient, or that readily answered his purposes. The fact that Stephen testified that he would drop the boys at their homes and then afterwards deliver his express packages is also stressed in appellant's argument, but we do not find any merit therein. The word "afterwards" used by the witness does not mean that he would then re-enter the service of the appellant, because if such were the case, it would be impossible to cover the hiatus, or distance lying between the point of departure between L and M and Sixteenth Street to Sixth Street on S. The packages had to be conveyed and the language of the witness means no more than this that he would travel to the express office by way of S Street to Second, then northerly to Second Street to the express office, and on the way he would drop the two boys at Sixth and S Streets. As the homes of the two boys would be reached before the express office, had their journey not been interrupted by the collision, the mere fact that the witness said he would deliver his packages after leaving the boys at their homes, affords no basis for the legal conclusion that the driver of the automobile was not at the same time performing services for his employer, the appellant, Miller Automobile Company. [2] The facts are, disregarding the conclusion of the witness, the driver of the automobile was on his way to the express company with the two packages, was performing his usual duties and took a different course to the express office to accommodate other employees of the company, and while engaged in the performance of the services and the rendering of the accommodation, the collision occurred.

The trial court, by proper instructions, left to the jury the determination of the fact as to whether the driver of

the appellant's automobile was or was not performing a service for the appellant within the scope of his employment at the time of the plaintiff's injury, and we think, under the facts disclosed and as shown by the discussion herein, the court did not err in so doing. We think the facts in this case bring it well within the principle applied to departures, incidental departures, and incidental services had or performed in connection with the main duties and obligations being performed by the employee, and did not constitute an abandonment for the time being of the employer's service. There is presented no element of a junketing trip, or pleasure trip, nothing further than going to the express office by a different route.

Relying upon the facts which have been hereinbefore set forth, the appellant calls attention particularly to the cases of *Gousse* v. *Lowe*, 41 Cal. App. 715 [183 Pac. 295], and *Kish* v. *California State Auto Assn.*, 190 Cal. 246 [212 Pac. 27], which rests upon the principle expressed in these words: "If the servant abandons or departs from the business of his master and engages in some matter suggested solely by his own pleasure or convenience, or pursues some object which relates to an end or purpose which may be said to be the servant's individual and exclusive business, and, while so engaged, commits a tort, the master is not answerable, although he was using his master's property, and although the injury could not have been caused without the facilities afforded to the servant by reason of his relations to his master."

We think the facts of the case at bar, however, show that it is clearly distinguishable from the two cases just cited and the principle upon which the decisions of those cases rest. In the case of *Gousse* v. *Lowe* the facts show that the servant had taken his master's automobile, and instead of going to the place of his ordinary destination, had departed therefrom and driven two miles away upon a mission peculiarly and *exclusively* his own. He had gone that entire distance for the purpose of interviewing a tailor, where he was having some work done for himself, and on his way back the collision occurred. He had not only stepped aside temporarily, but was engaged absolutely and exclusively in performing a mission of his own, and was not rendering any service to his master whatsoever. A reference to the facts

in the Kish case will also show that the servants had entirely performed their day's work for their employer, and were simply engaged in a mission or an act done for their own personal convenience and accommodation. In the instant case the driver of the appellant's automobile was at all times, after leaving the point of departure on Sixteenth Street, engaged in conveying the two packages to the American Express office. That he was also accommodating two other employees of the appellant is beyond question, but this does not take away the fact that he was also in the service of the company and was rendering a mission which it was his duty to perform. Our attention is also called to the cases of *Provo* v. *Conrad*, 130 Minn. 412 [153 N. W. 753], *O'Brien* v. *Stern Bros.*, 223 N. Y. 290 [119 N. E. 550]; *Drobnicki* v. *Packard Motor Co.*, 212 Mich. 133 [180 N. W. 459]; *Healy* v. *Cockrill*, 133 Ark. 327 [L. R. A. 1918D, 115, 202 S. W. 229], and some others following the principles therein set forth, but we think these cases also clearly distinguishable from the one at bar. In the *Provo* v. *Conrad* case the driver of the automobile had gone a number of blocks beyond where he was authorized to go and was performing no mission for his employer. In the *O'Brien* v. *Stern Bros.* case, *supra*, the chauffeur, as shown by the opinion in the case, had gone far beyond Pelham Manor, where he was to make delivery of a package, and on through several towns beyond. The facts also show that in the *Drobnicki* v. *Packard Motor Co.* case the employee was strictly on a mission of his own. In the case of *Healy* v. *Cockrill* the chauffeur, instead of performing the duty upon which he was sent, departed therefrom and drove a distance of six and one-half blocks for the purpose of getting a package of cigarettes, and it was while he was on this mission that the accident occurred, which was involved in the case. We do not deem it necessary to set forth the facts disclosed in the other cases cited by appellant, but they all show a complete departure and abandonment by the servant of the master's service and employment for the time being, and the engaging in business or pleasure exclusively his own. We think that the facts in this case bring it clearly within the principle enunciated in the case of *Gibson* v. *Dupree*, 26 Colo. App. 324 [144 Pac. 1133], where it is said: "The law is well settled that one may be in the service of another and

yet at times attend to business or pleasure for himself, and acts done while the servant is at liberty cannot render the master liable; but, if the servant, while about his master's business, makes a slight deviation for ends of his own the master remains liable, as, where the servant drives out of the most direct route for personal ends, or where a plot diverges from a direct course, for ends not connected with the master's business.'' In the opinion in this case, the different cases are taken up and considered, and the distinction is drawn between a departure from or abandonment of the master's business and the mere performing of the master's business in a different manner from that ordinarily theretofore performed, showing that in the first instance, the master would not be liable, while, under the second state of facts, the employer would be responsible. This case also follows the rule holding that where the facts show a performance of some service for the master, the fact of whether the employee is acting within the scope of his employment, while also performing some act of accommodation, should be left to the jury, and also where the departure is merely incidental or only slight. See, also, *McKeever* v. *Ratcliffe,* 218 Mass. 17 [105 N. E. 552], where similar questions were held properly submitted to the jury as a question of fact, when the departure was not such as to authorize the court in declaring the same as a matter of law. In a note to *Fisher* v. *Fletcher,* 22 A. L. R., beginning on page 1404, a large number of cases are collected bearing upon the question of deviation from the customary routes by chauffeurs and drivers of automobiles, from which it appears that if the servant is also engaged in the performance of some mission for himself, a slight or temporary deviation from the ordinary route of travel will not relieve the master from liability for negligence on the part of the servant, and especially is this true where the servant has been left free to select his own highway, street or route of travel.

We think the trial court in this case properly left to the jury the determination of the fact of whether the driver of appellant's automobile was not at the time of the injury suffered by the plaintiff also engaged within the scope of his services, and was in fact taking packages belonging to the Miller Automobile Company to the American Express office as well as accommodating the two boys, and the verdict

of the jury, including necessarily within it the finding of such fact, we conclude that the judgment is supported by the evidence, and should be affirmed, and it is so ordered.

Thompson, J., *pro tem.*, and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 20, 1925.

Myers, C. J., Waste, J., and Houser, J., *pro tem.*, dissented.