[S. F. No. 12904. In Bank.—October 31, 1930.]

CHARLES WAACK, Appellant, v. MAXWELL HARDWARE COMPANY et al., Respondents.

J. E. Reardon, Wm. M. Abbott, K. W. Cannon, Cyril Appel and Ivores R. Dains for Appellant.

Ford, Johnson & Bourquin and Ford & Johnson for Respondents.

PRESTON, J.—Plaintiff seeks by this action to recover damages for personal injuries sustained by him as the result of a collision between an automobile in which he was riding as a guest and defendant company's autotruck, operated by its employee, the defendant Vogel.

It is not necessary to detail the facts surrounding the actual happening of the accident, as the evidence, beyond any shadow of a doubt, establishes the undeniable negligence of said truck driver and the fact that plaintiff suffered severe and permanent injuries. Defendant company interposed the defense that said driver was not acting within the scope of his employment at said time, but was returning from an errand of his own. The jury found for plaintiff, assessing damages against defendant Vogel in the sum of $11,000, but further found in favor of defendant company. Judgment was entered upon this verdict. Plaintiff now appeals in an endeavor to have liability imposed against defendant company as well as against defendant employee. The contentions upon appeal relate solely to the question of whether the said driver was at the time of the accident

acting within the scope of his employment by defendant company. The facts bearing upon this issue, as shown by the evidence, will now be set forth:

Defendant Vogel, as truck driver, was employed by defendant company generally to make deliveries from its store to the residences of purchasers; his usual working hours were from 7:30 A. M. to 5:30 P. M., during the six days of the week from Monday to Saturday, inclusive. The truck belonged to the company but he was permitted to garage it at his home and to use it in traveling to and from his work. He did not always keep within his regular hours of employment; prior to the accident on many occasions when deliveries were heavy he had worked overtime and at night and once or twice he had even made deliveries on Sunday. On the Thursday preceding the accident, he left the battery of the car at McCarty's garage to be recharged, had a rented battery installed therein and found that the generator was in need of repair. The garageman told him to return Sunday, at which time the charged battery would be ready to replace and he would also have a special man on hand to repair the generator. It was the driver's custom to have minor repairs made on the car himself but to have his employer authorize the expenditure of any items over fifty cents or a dollar. On Thursday afternoon, therefore, he reported the condition of the battery and generator at the store and secured authority to proceed under his arrangement with the garageman. Defendant company, of course, was to pay for the rental of the battery and if he failed to call at the garage on Sunday, it would mean that the company would be charged with an extra day's battery rental.

On Sunday morning, however, he did not proceed directly to the garage. He was not supposed to use the truck for his own purposes, but nevertheless he and his brother-in-law drove in it from his home to the Athenian Nile Club, a distance of 2.5 miles, where they secured a cabinet belonging to the brother-in-law; from the club they proceeded to the brother-in-law's home, passing the said garage en route, a distance of 4.1 miles from the club to the garage and 1.1 miles from the garage to the brother-in-law's home, where they left the cabinet. Defendant driver then started in the truck for the garage, with the intention of leaving it

there for said repair work; the brother-in-law was to follow in his own machine, pick up said defendant at the garage and drive him home. However, when the truck was an even mile from the house of the brother-in-law and one-tenth of a mile from the garage, the accident occurred.

Had the driver gone straight from his own home to the garage that morning, he might have proceeded over any of several routes but by the most direct one he would have traveled a distance of only 1.7 miles and would not have crossed the intersection where the accident took place, but in traveling any of the other routes he might have passed the place of the accident without unreasonable deviation. Had he, however, gone first to the home of his brother-in-law to make arrangements for the latter to follow him in his own machine to the garage in order to pick defendant up there and drive him home after leaving the truck for repairs, then said defendant would have traveled approximately 3.9 miles and would have crossed the intersection where the accident occurred while acting presumably in the interests of his employer in having said repair work done.

It is, of course, the contention of defendant company in denying liability that the accident happened while said driver was acting purely in the pursuit of his own personal business; that it occurred at a point on the driver's route of deviation—a point where he would not have been had he attended to his business in the manner authorized by the employer; that the case may not be brought within the rule governing that class of cases where a slight or immaterial deviation from his path of duty will not affect the relation of a servant to his master; that here the deviation was so substantial as to amount in fact to an entire departure from the employer's business and was sufficient to bring the cause within the rule announced in those cases wherein the employee is held to have abandoned his master's business. Further, defendant company urges that the jury had before it a map of the city of Oakland, upon which the routes traversed were delineated and that evidence bearing upon this issue was submitted by both sides; that, therefore, the most that can be said here is that the question was properly submitted to the jury under appropriate instructions and their finding in favor of defendant company is conclusive.

Appellant, on the other hand, contends that it clearly appears as a matter of law from the undisputed evidence that said driver was engaged in discharging his employer's business; that at the time the accident occurred he was proceeding directly to and was within two or three blocks of the garage for the express purpose of returning the rent battery, having the employer's battery re-installed and leaving the truck for repairs to the generator; that his personal mission with respect to the cabinet had absolutely terminated for he had completed the delivery of it to his brother-in-law's home and he was thereafter acting solely in the interests of his employer. What the driver did on the morning in question before he started to attend to his employer's business, appellant contends, would be no more material than to consider what he did thereafter.

The case relied upon by the parties to throw light upon this issue (*Kish* v. *California S. Auto. Assn.*, 190 Cal. 246 [212 Pac. 27]; *Brimberry* v. *Dudfield Lumber Co.*, 183 Cal. 454 [191 Pac. 894]; *Kruse* v. *White Bros.*, 81 Cal. App. 86 [253 Pac. 178]; *Dennis* v. *Miller Auto. Co.*, 73 Cal. App. 293 [238 Pac. 739]; *Aubel* v. *Sosso*, 72 Cal. App. 57 [236 Pac. 319], and *Gousse* v. *Lowe*, 41 Cal. App. 715 [183 Pac. 295]) are to some extent similar in fact and are helpful but they do not solve the question before us, because in the last analysis each case of this character must be determined upon its own peculiar facts and circumstances. In other words, after a careful consideration of these authorities, we are but led to agree with defendant company, that the issue was properly one for determination, under proper instructions, by the jury. As said in the case of *Kruse* v. *White Bros.*, *supra*, at page 93: "Whether there has been a deviation so material or substantial as to constitute a complete departure is usually a question of fact. In some cases the deviation may be so marked and in others so slight relatively, that the court can say that no conclusion other than that the act was or was not a departure could reasonably be supported; while in still others the deviation may be so uncertain in extent and degree in view of the facts and circumstances as to make the question of what inferences should be drawn from the evidence properly one for the jury. (*Healey* v. *Corkrill*, 133 Ark. 327 [L. R. A. 1918D, 115, 202 S. W. 229]; *Ritchie* v. *Waller*,

63 Conn. 155 [38 Am. St. Rep. 361, 27 L. R. A. 161, 28 Atl. 29]; *Gousse* v. *Lowe, supra; Dennis* v. *Miller Auto Co.,* 73 Cal. App. 293 [238 Pac. 739].)"

██ It is, of course, true that as a matter of law a servant who deviates so far as to go some five miles on an errand for his relative is acting without the scope of his employment and any tort committed by him prior to the resumption of his master's business is one for which the master is not liable. ██ The question seems to be reduced then to this proposition: In this case when did a question of fact arise as to the time and place when the servant re-entered the service of the master? If the servant had gone first to the brother-in-law's residence for the purpose of having the brother-in-law assist him in reaching home after depositing the truck at the garage, would not a question of fact arise as to whether he had abandoned his master's service, and would not this be true even though in so doing he passed en route the garage? If so, does not a similar question arise as to whether or not, on reaching his brother-in-law's home, he there resumed his master's business? Again, it is not disputed that the servant might have logically traveled either of three routes in going to the garage which might have taken him by the place of the accident. If, therefore, the servant might have passed the place of the accident while en route from his home to the garage, even though in so doing he might have deviated slightly from the most direct route, would not a question of fact have arisen as to whether or not he had abandoned his master's service? If this be so, does not an issue of fact arise as to whether or not at this point again the servant re-entered the employment of his master?

If the foregoing propositions are sound, it seems to clearly follow that the trial judge, by certain of his instructions, encroached upon the province of the jury. In this connection, he gave the following instructions: "If you believe from the evidence in this case that the defendant Vogel was authorized by his employer to operate the Dodge automobile in question only from his residence to the High Street Garage on the day of the accident, for the purpose of having the same repaired, and you further believe that for some purpose of his own, not connected with his employer's business, Vogel delivered a certain cabinet to a point be-

yond and past said garage and further distant from his home than he would have been required to travel in performing the duties authorized by his employer; and if you further find from the evidence that after delivering said cabinet and while returning from the place where said cabinet was delivered to the garage where the repairs were to be made to the automobile, but while still at a place where he would not have been except for the delivery of the cabinet, the accident occurred, I instruct you that your verdict must be in favor of the defendant Maxwell Hardware Company, for if an employee goes on an independent mission of his own at a point beyond and past the point where he was authorized to go by his employer, this mission does not terminate until he has returned to the point of departure or to a place where he would have been in the service of his employer. . . .

" . . . If in this case you believe from the evidence that the defendant Vogel in operating the Dodge automobile . . . drove the same for some purposes solely of his own to a point beyond and past that authorized by his employer, and at the time of the accident was still beyond and past a point authorized to be traveled by his employer although on his return journey to the point of deviation, then I instruct you that your verdict must be in favor of the defendant Maxwell Hardware Company.

"The Maxwell Hardware Company is not responsible for any act of the defendant Vogel in operating the Dodge automobile, which act took place at a locality to which Mr. Vogel had traveled in either going to or returning from a private mission of his own, provided you find that such locality was not one where his duties for the Maxwell Hardware Company would reasonably have required him to be."

The elements above referred to seem to be entirely excluded from said instructions. It is nowhere stated therein that the servant might not have been authorized to go with the truck to a point where he could procure a conveyance in which to return home. The instructions make a pivotal question of the fact that the servant passed the garage. They likewise exclude all reference to deviation. They presuppose that the servant had specific and definite instructions as to the route he must travel. They contain references to a point where "he would not have been" and thus

make a geographical test of the matter determinative, as they exclude the possibility of a slight deviation and presuppose an inflexible route of travel. They exclude the possibility of authorized travel by any other than the most direct route. The last-quoted instruction seems to exclude the idea of authority on the part of the servant to go to the brother-in-law's home for assistance. The word "required" in said last-mentioned instruction seems to be inappropriate, as the word "permitted" would have been much better. On the whole we are convinced that if the court had confined his instructions to the general principles of law and had not made a portion of the facts only the basis of certain instructions, to the exclusion of the other facts and inferences in the case, the jury might have reached another result. This is manifested by the fact that the record shows that the jury were in fact confused as to their duty under the instructions as given by the court, for after hearing the charge of the court, the jurors retired for deliberation at 4:30 P. M. At 5:35 P. M. they returned into court and the following proceedings were had, after which, with the exception of a short time out for dinner, they deliberated until 9:45 P. M. before reaching a verdict:

"The Court: . . . I understand you have not agreed upon a verdict. . . . And that you desire some further information concerning instructions? . . . On what issue was it you desired further information on the instructions? The Jurors: The fifty per cent responsibility. There was two papers that you read about that, as near as we could explain it. The Court: You mean having to do with the scope of employment and whether or not the other defendant was or was not liable, the law relating to that point? The Jurors: Yes, sir. We think you were about half through when you read it, the last paper, there were two papers . . . The Court: . . . If the matter in which you are in doubt involves the instructions on the question of scope of employment, I feel it my duty at this time to repeat those instructions to you on that point. Is that the point on which you are at sea and are having difficulty. That is the point, is it? A Juror: There was one paper that you read, perhaps there was about that much (indicating) . . . The Court: Well, did it have to do with that phase of the case? The Juror: Yes. The Court: If that

was to be re-read, I would think it only right to re-read all instructions on that point although there were several of them . . . '' The court thereupon re-read to the jury the instructions numbered 23 to 40, inclusive, bearing upon the issue in question, and including the alleged erroneous instructions above quoted.

To our mind the above colloquy clearly indicates that said erroneous instructions may have constituted the very stumbling block which confronted the jurors in their endeavor to reach a fair verdict under the charge of the court.

Lastly, in support of the conclusion here announced, the case of *Weber* v. *Wiley B. Allen Co.*, 64 Cal. App. 274 [221 Pac. 663], may be cited as directly in point. There, to an instruction requested by the employer to the effect that if at the time of the accident the employee was on a trip for his own pleasure, the employer would not be liable, the trial court added language to the effect that if the jury should find that the employee went on the trip to see a prospective purchaser on business of the employer, then the return trip at the time of the accident was a part of the business trip for the employer, the court held that the added language had the effect of charging the jury on a question of fact and reversed the judgment.

The judgment is reversed.

Curtis, J., Seawell, J., Richards, J., Langdon, J., and Waste, C. J., concurred.

Rehearing denied.