[Civ. No. 11779.   First Dist., Div. One.   Mar. 17, 1942.]

FRANCES R. PIERCE, Respondent, v. ADAM PATERSON, Appellant.

Hadsell, Sweet, Ingalls & Lamb and Hadsell, Sweet, Ingalls & Carroll for Appellant.

Lercara & Nelle, Lewis E. Lercara and Clifford W. Nelle for Respondent.

JONES (B. C.), J. pro tem.—This appeal is from an order granting a new trial in a malpractice action against a physician and surgeon. Willis Pierce, a boy of ten years, sustained a crushing of the middle finger of his right hand by getting it caught in the door of his bath room. His mother, the respondent, promptly summoned the defendant to treat the injury. On account of another emergency call he instructed her over the telephone to place the finger in an ice pack to stop the bleeding. This she did after replacing the nail which had been torn loose. Within about half an hour the defendant arrived. Considerable blood had flowed from the wound and clotted about the finger. It also developed later that the bone in the finger was crushed. Without any other preparation or cleansing, the defendant lifted the nail slightly and squeezed some tincture of merthiolate underneath it and then packed the finger in metanic jelly and bandaged it. Treatment in substantially this same manner was continued for several days when the boy developed symptoms of a tetanus infection. Another physician was immediately called and the patient taken to the Alameda County Hospital. Tetanus antitoxin was immediately administered but he failed to respond and died of the infection the following day. The case was tried before a jury which returned a verdict for the defendant. The plaintiff thereupon moved for a new trial which was granted, and it is from this order granting a new trial that the appeal is taken.

The order granting the motion for a new trial does not specify the grounds upon which it was granted. In the absence of a statement in the order that the new trial was granted upon the ground of the insufficiency of the evidence to justify the verdict, the presumption is that it was not made on that ground. We may not, however, disturb the order if it can be upheld on any other ground. (*Phillips* v. *Powell*, 210 Cal. 39 [290 Pac. 441].) It is urged in support of the order, however, that the court erred in instructing the jury and in sustaining an objection to the admission of the records of the Alameda County Hospital pertaining to the treatment of the decedent in evidence. The position of the appellant is that the hospital records were properly excluded, and that there was not sufficient evidence to take the case to the jury thus rendering any error in instructing the jury of no consequence.

As the court said in *Sim* v. *Weeks*, 7 Cal. App. (2d) 28

[45 Pac. (2d) 350]: "It is well settled that a physician and surgeon cannot be held to guarantee the results of his professional services. 'However, it is equally well settled that in undertaking a treatment of a patient the practitioner impliedly contracts and represents not only that he possesses the reasonable degree of skill and learning possessed by others of his profession in the locality, but that he will use reasonable and ordinary care and skill in the application of such knowledge to accomplish the purpose for which he is employed; and that if injury is caused by a want of such skill or care on his part he is liable for the consequences which follow. (*Houghton* v. *Dickson,* 29 Cal. App. 321 [155 Pac. 128]; *Nelson* v. *Painless Parker,* 104 Cal. App. 770 [286 Pac. 1078]; *Perkins* v. *Trueblood,* 180 Cal. 437 [181 Pac. 642]; *Hesler* v. *California Hospital Co.,* 178 Cal. 764 [174 Pac. 654]; *Ley* v. *Bishopp,* 88 Cal. App. 313 [263 Pac. 369]; *Patterson* v. *Marcus,* 203 Cal. 550 [265 Pac. 222].)' "

The contention here made is not that the defendant was not possessed of the requisite knowledge and skill but that he was negligent in the treatment of the injury. In this connection it is urged that there was no proper examination of the wound; no cleansing; no proper sterilization; and that the application of metanic jelly without cleansing and sterilization operated to seal in any bacilli that were present and directly induced the infection from which the boy died. In response to the question from plaintiff's counsel, "When you put the metanic jelly on this wound did you seal the wound?" and the defendant replied, "That was the purpose of putting it on".

Dr. Ruedy, a physician and surgeon called by the plaintiff, testified that under the circumstances of the case "the use of reasonable medical care and skill by the attending physician demanded a thorough cleaning of the sutured finger and to give the finger free access to the air to overcome any anaerobic tetanic germs". Several physicians and surgeons of established reputations called as witnesses by the defendant testified that in the case of such a wound as is here presented ordinary care would demand a thorough cleansing and the application of an antiseptic. Within eight or nine days after the first treatment of the wound by the defendant the infection developed to the point that it became manifest. It is a reasonable inference to be drawn from the testimony of the expert witnesses and the other evidence

that the infection would not have occurred if the wound had been properly cleansed and antisepticized. As is said in *Barham* v. *Widing*, 210 Cal. 206 [291 Pac. 173], "It is not necessary in the trial of civil cases that the circumstances shall establish the negligence of the defendant as the proximate cause of injury with such absolute certainty as to exclude every other conclusion. It is sufficient if there is substantial evidence upon which to reasonably support the judgment. (*Ley* v. *Bishopp*, 88 Cal. App. 313, 316 [263 Pac. 369].)" Where the evidence presented tends to show that the negligence alleged resulted in the infection producing the death it presents a case for the jury. (*Sim* v. *Weeks, supra; Swanson* v. *Hood*, 99 Wash. 506 [170 Pac. 135].)

In instructing the jury the court gave the following instruction: "The charge of negligence against the defendant, Doctor Adam Paterson, is that he was negligent in not administering tetanus antitoxin to the deceased minor, Willis Pierce. If you find from the evidence that in deciding not to administer said serum, the defendant doctor possessed and exercised the degree of skill, learning and care ordinarily possessed and exercised by physicians in the same line of practice in San Leandro, or similar localities, then your verdict will be against the plaintiff and in favor of the defendant".

The vice in this instruction is immediately apparent. It limits the jury in their consideration to the decision of Dr. Paterson to not administer tetanus antitoxin and reserves from their consideration all of the other alleged negligent acts to which evidence was addressed. All issues of negligence except failure to administer tetanus antitoxin were excluded from the consideration of the jury by the instruction. It in effect instructed the jury to return a verdict for the defendant if it appeared that there was no negligence in failing only to administer antitoxin serum. The jury in effect was told to disregard all facts bearing upon the failure of the defendant to cleanse and sterilize the wound. It is not open to question that an instruction is prejudicially erroneous which excluded an issue that is supported by evidence. (*Galloway* v. *United Railroads*, 69 Cal. App. 770 [232 Pac. 491]; *Pierce* v. *United Gas & Electric Co.*, 161 Cal. 176 [118 Pac. 700]; *Starr* v. *Los Angeles Railway Corp.*, 187 Cal. 270 [201 Pac. 599].) The existence of such compels the granting of a new trial.

Another contention of the appellant is that there is no expert testimony in support of plaintiff's case and that it falls for this reason. In this connection it is urged that Dr. Ruedy, the only physician called by the plaintiff, did not qualify as an expert. This witness testified that he graduated from the University of Oregon in 1897, and was admitted to practice in California in 1898. He spent some time in post-graduate work in Chicago and New York, and in Vienna, Austria, and Berne, Switzerland. After completing his post-graduate work he practiced for about five years in Portland, Oregon, and from 1910 to 1920 was on the staff of the Spokane, Portland and Seattle Railroad at Spokane, Washington. In 1920 he removed to Oakland, in Alameda County, and has practiced his profession at said place ever since. He further testified that during all of the period of his practice in Alameda County he was familiar with the standard of care and skill ordinarily used, possessed and exercised, by physicians and surgeons practicing in Alameda County and in their treatment of wounds such as was suffered by the decedent, and of tetanus infections. Under well established rules these qualifications of Dr. Ruedy rendered him competent to testify as an expert witness. (*Hutter* v. *Hommel*, 213 Cal. 677 [3 Pac. (2d) 554]; *Warnock* v. *Kraft*, 30 Cal. App. (2d) 1 [85 Pac. (2d) 505]; *Valdez* v. *Percy*, 35 Cal. App. (2d) 485 [96 Pac. (2d) 142].)

The plaintiff produced and offered as original evidence the records of the Alameda County Hospital kept in connection with the admission of the decedent and the treatment administered to him. These records consist of the Admission Record, History Record, Treatment Record, Progress Record, Pathological Report, Clinical Chart, Report of Autopsy Surgeon and General Summary. Objection was made to the introduction of these records on the ground that no proper foundation had been laid for their introduction, and that they were hearsay. Even though it be assumed that they were admissible, a point we do not decide, no error was here made in excluding them, as no proper foundation was laid for their introduction. No proper showing was made that any of the records mentioned were required to be kept by any law.

We are of the opinion that the giving of the erroneous instruction complained of constituted sufficient grounds for the granting of a new trial.

The order appealed from is affirmed.

Peters, P. J., and Knight, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 14, 1942.