[L. A. No. 18702. In Bank. Jan. 20, 1944.]

ELSIE LOPER et al., Respondents, v. CAMERON E. MOR-
RISON et al., Defendants; ARDEN FARMS, INC. (a
Corporation), Appellant.

Russell H. Pray, Henry F. Walker, S. J. Nordorf and William C. Price for Appellant.

Joseph A. Ball, Albert D. White and Kenneth Sperry for Respondents.

GIBSON, C. J.—Mrs. Elsie Loper (hereafter called plaintiff) and her husband brought this action for damages resulting from an automobile accident in which a car driven by Mrs. Loper was struck by one operated by defendant Morrison, an employee of defendant Arden Farms, Inc. From a judgment against both defendants, Arden Farms, Inc. (hereafter called defendant) alone has appealed.

Morrison was employed by defendant to make deliveries of milk and other dairy products within a designated area, to collect from customers and to solicit new business. Deliveries were made in a truck furnished by defendant, but Morrison used his own car in collecting accounts and soliciting new business after regular hours.

On the afternoon of the accident Morrison left defendant's office in his own car to call on a prospective customer and to collect a delinquent account from a Mrs. Hanson. He was accompanied by Edward Dolan, a fellow employee, to whom he had offered a ride home. After calling on the new customer they went to the Hanson residence about 4:00 p. m. but found no one there. The Hanson account had been de-

linquent for some time, and Morrison had made numerous unsuccessful attempts to collect it. He had learned from past experience that the Hansons were likely to be at home later in the evening, and he decided to call again about 5:30 p. m. While waiting for Mrs. Hanson to return, Morrison, who had not eaten since breakfast, went with Dolan to a tavern near Dolan's home for a lunch of sandwiches and beer, and then took Dolan home. The accident happened about 5:30 p. m. while Morrison, returning from Dolan's home, was on his way to collect the Hanson account. Dolan lived about two miles outside the area covered by the milk route, and the collision occurred before Morrison reached the boundaries of his route.

█ Defendant contends that Morrison was not acting within the scope of his employment at the time of the accident. First, it is argued that the Hanson account was owed to Morrison personally and that in attempting to collect the same he was engaged in his own business. Certain customers whose credit had not been approved by defendant were classified as "unauthorized accounts." Drivers were required to assume liability and furnish bond to protect defendant from losses caused by the failure of such customers to pay for products sold them. Such liability did not attach, however, until after the employment of the driver was terminated, and was limited to a total of $100. Approximately one-third of the customers on Morrison's route, including Mrs. Hanson, were "unauthorized accounts." Mrs. Hanson, who had been a customer of Arden for a long time, owed defendant $25 when Morrison took over the route. Although Morrison continued to deliver dairy products to her, collections made by him were turned over to defendant and credited on the old balance. Morrison worked on a straight salary with no commissions, and all the money he collected was turned over to defendant. He did not buy milk from Arden and sell it to customers. The money due from Mrs. Hanson was owed to defendant and in attempting to collect the account, Morrison was performing a duty imposed by his employer and within the scope of his employment. █ And there is evidence that Morrison, to his employer's knowledge, frequently called upon customers after his regular hours, using his own car. This is sufficient to support a finding that he was authorized to do this type of work at the time the accident took place.

▇ Defendant next contends that we are bound to conclude, as a matter of law, that when Morrison left the Hanson house to take Dolan home, he abandoned the business of his employer and entered upon a mission of his own and had not re-entered his employer's business when the accident occurred, and that therefore he was not acting within the scope of his employment at the time of the accident. The general rule in these cases is stated in *Kruse* v. *White Bros.*, 81 Cal.App. 86, 93 [253 P. 178], recently quoted with approval in *Westberg* v. *Willde*, 14 Cal.2d 360, 373 [94 P.2d 590]: "Whether there has been a deviation so material or substantial as to constitute a complete departure is usually a question of fact. In some cases the deviation may be so marked, and in others so slight relatively, that the court can say that no conclusion other than that the act was or was not a departure could reasonably be supported; while in still others the deviation may be so uncertain in extent and degree in view of the facts and circumstances as to make the question of what inferences should be drawn from the evidence properly one for the jury." (See also Rest., Agency, sec. 228, Comment d.) Courts have held as a matter of law that an employee was not in the scope of his employment when the evidence clearly showed a complete abandonment. (*Gordoy* v. *Flaherty*, 9 Cal. 2d 716 [72 P.2d 538]; *Peccolo* v. *City of Los Angeles*, 8 Cal. 2d 532 [66 P.2d 651]; *Kish* v. *California State Automobile Assn.*, 190 Cal. 246 [212 P. 27]; *Martinelli* v. *Stabnau*, 11 Cal.App.2d 38 [52 P.2d 956]; *Hanchett* v. *Wiseley*, 107 Cal. App. 230 [290 P. 311]; *Gousse* v. *Lowe*, 41 Cal.App. 715 [183 P. 295].) But in many other cases it has been held that a jury question was presented. (*Westberg* v. *Willde*, 14 Cal.2d 360 [94 P.2d 590]; *Waack* v. *Maxwell Hardware Co.*, 210 Cal. 636 [292 P. 966]; *Cain* v. *Marquez*, 31 Cal.App. 2d·430 [88 P.2d 200]; *Kruse* v. *White Bros.*, 81 Cal.App. 86 [253 P. 178]; *Dennis* v. *Miller Automobile Co.*, 73 Cal.App. 293 [238 P. 739]; see 2 Mecham on Agency (2d ed.), sec. 1916, p. 1491.) In deciding the case before us the results reached in other decisions are helpful but not necessarily controlling. (See *Waack* v. *Maxwell Hardware Co.*, 210 Cal. 636, 640 [292 P. 966].) ▇ In each case involving scope of employment all of the relevant circumstances must be considered and weighed in relation to one another. (*Waack* v. *Maxwell Hardware Co.*, 210 Cal. 636, 640 [292 P. 966]; *Cain*

v. *Marquez,* 31 Cal.App.2d 430, 441 [88 P.2d 200] ; *Fiocco*
v. *Carver,* 234 N.Y. 219 [137 N.E. 309] ; *Bryan* v. *Bunis,* 208
App.Div. 389 [203 N.Y.S. 634] ; 2 Mecham on Agency (2d
ed.), sec. 1880, pp. 1461-1462, and, generally, pp. 1457-1491;
Rest., Agency, secs. 228-237.) Under these authorities the
factors to be considered, insofar as pertinent to this case, are
the intent of the employee, the nature, time, and place of his
conduct, his actual and implied authority, the work he was
hired to do, the incidental acts that the employer should
reasonably have expected would be done, and the amount of
freedom allowed the employee in performing his duties.

 Under the circumstances of this case we cannot hold
as a matter of law that Morrison's trip to the tavern and to
Dolan's home constituted an abandonment of his employer's
business. As said heretofore, it was within Morrison's author-
ity to collect accounts at the time the accident occurred.
 The employer's liability was not necessarily terminated
by reason of the fact that Morrison combined a private pur-
pose of his own with the business of his employer. As stated
in *Ryan* v. *Farrell,* 208 Cal. 200, 204 [280 P. 945] : ''It is the
established rule in this jurisdiction that where the servant is
combining his own business with that of his master, or at-
tending to both at substantially the same time, no nice in-
quiry will be made as to which business the servant was actu-
ally engaged in when a third person was injured; but the
master will be held responsible, unless it clearly appears that
the servant could not have been directly or indirectly serving
his master.'' Thus, if the accident had occurred on the trip
from the dairy to the Hanson home prior to 4 p. m., the jury
clearly could have found that Morrison was acting within his
employment although he intended thereafter to get something
to eat, and take Dolan home. Further, a deviation from
the most direct route for these purposes before going to the
Hanson home would not necessarily have constituted an aban-
donment. (See *Westberg* v. *Willde,* 14 Cal.2d 360, 372 [94 P.
2d 590] ; *Cain* v. *Marquez,* 31 Cal.App.2d 430 [88 P.2d 200] ;
*Gayton* v. *Pacific Fruit Express,* 127 Cal.App. 50 [15 P.2d 217] ;
*Kruse* v. *White Bros.,* 81 Cal.App. 86 [253 P. 178] ; *Dennis* v.
*Miller Automobile Co.,* 73 Cal.App. 293 [238 P. 739].) In
the Kruse and Cain cases, *supra,* detours of several miles were
held to present questions of fact. The deviation cases, al-
though not identical with the situation here involved, are
quite analogous. Morrison, upon finding no one at home, be-

lieved that he would have to wait over an hour before he could see Mrs. Hanson. If he had spent this time in his car in front of the house he would have remained within the scope of his employment. His conduct in going elsewhere for some private purpose while waiting to perform his specific duties presented a question of fact as to whether he had entirely abandoned the business of his employer. (See *Robertson* v. *Spitler*, 153 Minn. 395 [190 N.W. 992].) The employer might reasonably expect that his employee, while so waiting, would engage in some activities for his own purposes. Here, Morrison, who began work at 3 a. m., had not eaten since breakfast, and the fact that he went to a tavern for sandwiches and beer does not require us to hold that he had abandoned his employment, particularly in view of his testimony that he would not have been at the tavern if he had not been waiting to call upon Mrs. Hanson. And, considering the time he had to wait, we cannot hold as a matter of law that it was unreasonable for him to travel somewhat less than two miles for this purpose. Similarly, under these circumstances, we cannot say that his going a short distance farther to take Dolan home was such an unreasonable means of using his time that it must be deemed an abandonment of his employment. Morrison's purpose at the time of the accident was to serve his employer, and it could be reasonably inferred that such purpose continued throughout the period he waited to see Mrs. Hanson. The evidence was sufficient to support a finding that Morrison was acting within the scope of his employment at the time of the accident.

Defendant also contends that the trial court erred in excluding from evidence a portion of a hospital chart called a ''nurses' record.'' The chart contained entries by nurses relative to the condition of the plaintiff during the time she spent in the hospital after the accident, and was offered to refute testimony as to the nature and extent of plaintiff's injuries. Defendant contends that the record should have been admitted under sections 1953e-1953h of the Code of Civil Procedure, known as the ''Uniform Business Records as Evidence Act.'' Section 1953f provides: ''A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near

the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.'' Section 1953e provides: ''The term 'business' as used in this article shall include every kind of business, profession, occupation, calling or operation of institutions, whether carried on for profit or not.'' Section 1953g requires that ''This article shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those States which enact it.'' ▇ The purpose of this act is to enlarge the operation of the business records exception to the hearsay evidence rule. The common law exception is based on the assumption that records kept in the general course of business usually are accurate, and may be used, in case of necessity, as evidence of the matter recorded. (Hale, *Hospital Records as Evidence*, 14 So.Cal.L.Rev. 99, 100.) But the exception has been hedged about with so many burdensome restrictions that legislation has been necessary to secure widespread use of such records. Speaking of the desirability of similar legislation, the United States Supreme Court, in the recent case of *Palmer* v. *Hoffman*, 318 U.S. 109 [63 S.Ct. 477, 481, 87 L.Ed. 645, 144 A.L.R. 719]), stated: ''The several hundred years of history behind the Act (Wigmore, *supra*, secs. 1517-1520) indicate the nature of the reforms which it was designed to effect. It should of course be liberally interpreted so as to do away with the anachronistic rules which gave rise to its need and at which it was aimed.''

▇ The business entry statutes are not limited to entries in commercial enterprises, and hospital records are properly included within their operation. (*Ulm* v. *Moore-McCormack Lines*, 115 F.2d 492; *Borucki* v. *MacKenzie Bros. Co.*, 125 Conn. 92 [3 A.2d 224]; *Beverley Beach Club, Inc.* v. *Marron*, 172 Md. 471 [192 A. 278]; *Gile* v. *Hudnutt*, 279 Mich. 358 [272 N.W. 706]; *Conlon* v. *John Hancock Mutual Life Ins. Co.*, 56 R.I. 88 [183 A. 850]; and see VI, Wigmore on Evidence (3d ed.), sec. 1707, p. 36; 14 So.Cal.L.Rev. 104; 144 A.L.R. 731.) There is no reason to believe that a hospital record is not as truthful as a record kept by a commercial firm. It is a record upon which treatment of the patient is based, and experience has shown it to be reliable and trustworthy. (See discussion in *Globe Indemnity Co.* v. *Reinhart*, 152 Md. 439, 447 [137 A. 43].) ▇ It is the object of the business records statutes to eliminate the necessity of calling each wit-

ness, and to substitute the record of the transaction or event. It is not necessary that the person making the entry have personal knowledge of the transaction. (*Storm & Butts* v. *Lipscomb,* 117 Cal.App. 6, 20 [3 P.2d 567]; *Patrick* v. *Tetzlaff,* 46 Cal.App. 243 [189 P. 115]; *Massachusetts Bonding & Ins. Co.* v. *Norwich Pharmacal Co.,* 18 F.2d 934, 937.) Plaintiff cites several California cases in support of its contention that hospital records are not admissible in evidence. (*Estate of Flint,* 100 Cal. 391 [34 P. 863]; *Pierce* v. *Paterson,* 50 Cal.App.2d 486 [123 P.2d 544]; *Lusardi* v. *Prukop,* 116 Cal. App. 506 [2 P.2d 870].) All of these cases were tried before the Uniform Act became effective in this state, and are not controlling.

The Uniform Act provides that the record is competent evidence if authenticated in the prescribed manner and ". . . if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." (Code Civ. Proc., sec. 1953f.) Defendant argues that the foundation presented in this case was sufficient to justify the admission of the nurses' record in evidence and that therefore it was error for the court to exclude it. It is unnecessary, however, for us to determine whether the trial court was justified in rejecting the record on these grounds since we are of the opinion no error prejudicial to the defendant has been shown by its exclusion. Before this court can reverse a judgment for improper exclusion of evidence, an examination of the entire cause must show that the error complained of resulted in a miscarriage of justice. (Cal. Const., art. VI, sec. 4½.) The testimony which the nurses' record was offered to refute was to the effect that while plaintiff was in the hospital she suffered from headaches and many painful bruises and sore spots, that she was nervous and hysterical, and that she was given pills to help her to sleep and to ease her pain. The nurses' record does not refute this evidence. In fact many notations in the chart support plaintiff's testimony. Those notations show that plaintiff had frequent headaches and suffered from pain in various parts of her body, that she was nervous, and that she was given a considerable quantity of sedatives and other drugs. Defendant argues that other notations in the chart to the effect that plaintiff did not complain, or that she was

comfortable, resting or sleeping, refute evidence of pain and suffering. The entry "no complaints" as it was used here does not indicate that plaintiff did not suffer, nor that she did not complain of her pain and nervousness. A witness called by defendant to authenticate the chart testified that it was the practice of the nurse who kept the chart to make the entry "no complaints" whenever nothing special was reported to her by the nurse in charge of the patient. And notations that plaintiff slept or rested, and that she was comfortable at times, do not contradict the specific evidence as to her pain and suffering. Therefore, while the nurses' chart contained relevant evidence on the issue of the nature and extent of plaintiff's injuries, we cannot say that its exclusion resulted in a miscarriage of justice.

Defendant contends further that even though full credence be given the testimony introduced by plaintiff, the judgment awarding plaintiff $2,000 and her husband $600 was excessive. An appellate court will not disturb a verdict unless it is so grossly excessive as to immediately suggest passion or prejudice, or corruption on the part of the jury. (*Loeb* v. *Kimmerle,* 215 Cal. 143, 164 [9 P.2d 199] ; *Stanhope* v. *Los Angeles College of Chiropractic,* 54 Cal.App.2d 141, 148 [128 P.2d 705].) Plaintiff spent twenty-six days in the hospital. Her injury caused her much pain and suffering, both physical and mental, while she was at the hospital and after she went home. Doctor and hospital bills exceeded $400, and money was expended to repair the Lopers' automobile. For some time plaintiff was unable to carry on her usual duties helping her husband with his business. This evidence is sufficient to justify the amount awarded.

It is contended that the trial court was guilty of prejudicial misconduct. Many remarks of the trial judge are claimed to be erroneous, but only two were assigned as error at the trial. Both of these remarks were made to defendant's attorney in connection with rulings on the admissibility of evidence. They could not be construed as indicating that the judge was in any way partial toward plaintiff or her case, and the jury was specifically instructed that if the judge had said or done anything which indicated that he was inclined to favor either party, it should be disregarded.

Defendant argues that the court erred in giving certain instructions dealing with *respondeat superior*. These

instructions properly stated the theory we have already found applicable in this case. Defendant further claims that the court improperly refused to give instructions defining "scope of employment" and stating the rule that abandonment of employment by the employee relieves the employer from liability. But other instructions which were given adequately covered these subjects. Defendant also contends that the court erred in giving instructions dealing with future damage, because, it is claimed, there was no evidence to support such damage. There was testimony, however, that at the time of the trial plaintiff still was suffering from headaches, nervousness and pain. This evidence tended to prove future damages and was sufficient to justify the instruction. (See *Bauman* v. *City and County of San Francisco*, 42 Cal.App.2d 144, 163 [108 P.2d 989]; *Parsell* v. *San Diego Consol. G. & E. Co.*, 46 Cal.App.2d 212 [115 P.2d 539].)

The judgment is affirmed.

Shenk, J., Curtis, J., Carter, J., and Schauer, J., concurred.

. TRAYNOR, J.—I dissent. I cannot agree that it is a question of fact whether Morrison was acting within the scope of his employment at the time of the accident. If the facts are undisputed it is a question of law whether liability arises from such facts. (*San Diego Trust & Savings Bank* v. *San Diego County*, 16 Cal.2d 142 [105 P.2d. 94, 133 A.L.R. 416]; *Leis* v. *City and County of San Francisco*, 213 Cal. 256, 258 [2 P.2d 26]; *Gaston* v. *Hisashi Tsuruda*, 5 Cal.App.2d 639, 642 [43 P.2d 355]; *Bell* v. *McColgan*, 68 Cal.App. 478, 482 [229 P. 858]; *Osgood* v. *City of San Diego*, 17 Cal.App.2d 345 [62 P.2d 195].) Ordinarily the court must decide such questions, although occasionally the task may fall to the jury. Thus in the field of negligence if the court does not establish a standard of reasonable conduct the case goes to the jury to determine whether the defendant has acted as a reasonably prudent man would act under the circumstances. The jury then has the burden not only of deciding what the facts are but of formulating a standard of reasonable conduct. (*Clinkscales* v. *Carver*, 22 Cal.2d 72, 75 [136 P.2d 777].) As a general rule, however, the court determines the law and the jury the facts, unless it appears that the issue is one that

the jury can determine better than the court. (See Brown, *Law and Fact*, 56 Harv.L.Rev. 899.) In the present case the court can determine better than the jury the extent of the vicarious liability to which the Arden Milk Company should be subject.

The majority opinion cites section 228, comment d, of the Restatement of Agency, which states that it is the function of the court to determine whether an act of a servant is within the scope of his employment "if the answer is clearly indicated," but that otherwise the question is for the jury. If the facts are undisputed, however, it is solely a question of law whether acts are within the scope of the employment. If the question of law is a complicated one there is all the more reason that it should be determined by the court rather than the jury.

There is no dispute as to the facts in the present case. After reaching the place where he was to collect a bill, Morrison left to obtain a meal, transport Dolan home, and await the time for another effort to collect the bill. The undisputed evidence shows that it was no part of Morrison's duty to take Dolan home, and that he did so merely as a personal favor. The accident occurred on the way back from Dolan's home, some twenty blocks from the nearest point of Morrison's assigned territory. It is my opinion that Morrison was returning from a personal mission and had not resumed his employment at the time of the accident and was therefore not then acting within the scope of his employment. (*Gordoy* v. *Flaherty*, 9 Cal.2d 716 [72 P.2d 538]; *Peccolo* v. *City of Los Angeles*, 8 Cal.2d 532 [66 P.2d 651]; *Kish* v. *California State Automobile Assn.*, 190 Cal. 246 [212 P. 27]; *Martinelli* v. *Stabnau*, 11 Cal.App.2d 38 [52 P.2d 956]; *Hanchett* v. *Wiseley*, 107 Cal.App. 230 [290 P. 311]; *Adams* v. *Tuxedo Land Co.*, 92 Cal.App. 266 [267 P. 926]; *Helm* v. *Bagley*, 113 Cal. App. 602 [298 P. 826].)

Edmonds, J., concurred.

Appellant's petition for a rehearing was denied February 17, 1944. Traynor, J., voted for a rehearing.